UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO ANTHONY ESPARZA,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>LEROY D. BACA, L.A. County Sheriff, et al.<br><br>　　　　　Defendants. | Case No. CV 07-04118 PSG (OP)<br><br>MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.
## PROCEEDINGS

On July 31, 2007, Leo Anthony Esparza ("Plaintiff"), filed a pro se Civil Rights Complaint pursuant to 42 U.S.C. § 1983 ("Complaint"), after being granted leave to proceed in forma pauperis. On August 24, 2007, the Court dismissed the Complaint with leave to amend.

On September 20, 2007, Plaintiff filed a First Amended Complaint ("FAC"). On, January 4, 2008, Defendants Leroy Baca, David Waters, Gary Adams, I. Becerra, Chuck Antuna, and Sander Peck filed a Motion to Dismiss the Complaint ("Motion to Dismiss"). On March 5, 2008, Plaintiff filed an Opposition to Defendants' Motion to Dismiss ("Opposition"). On March 19, 2008, Defendant filed a Reply to Plaintiff's Opposition ("Reply"). Thus, this matter now is ready

for decision.[1]

## II.

## **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

In this case, Plaintiff, a civil detainee, has filed a civil rights action against Defendants Los Angeles County Sheriff Leroy D. Baca, Los Angeles County Counsel Lloyd W. Pellman, Sheriff's Deputies David Waters, Gary L. Adams, I. Becerra, and Chuck Atuna, Chief Medical Officer Sander Peck, and several Doe defendants. (FAC at 1-4.) The suit arises out of Plaintiff's detention at the Los Angeles County Jail (Twin Towers) ("LACJ") between November of 2004 and March of 2007 and alleges violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (Id.)

Plaintiff's claims are premised on the following incidents relating to his conditions of confinement:

(1) Upon his arrival at the LACJ in November 2004, Plaintiff was forced to sleep on the floor for several days (FAC ¶ 15);

(2) It was not until late December 2004 that Plaintiff was housed only with other involuntary civil detainees such as himself (id. ¶¶ 17, 18, 20);

(3) Plaintiff was denied adequate medical care/treatment that has resulted in severe pain (id. ¶¶ 22-26);

(4) Plaintiff was denied adequate visual treatment/care, and was not provided a needed cataract surgery (id. ¶¶ 27-36);

(5) Plaintiff was subjected to several retaliatory searches during his incarceration, between 2005 and 2007 (id. ¶¶ 37-99);

---

[1] The FAC also named as a Defendant Lloyd Pellman. (FAC at 1, 3.) On April 18, 2008, Defendant Pellman filed a Motion to Dismiss the FAC. (Dkt. No. 31.) On May 12, 2008, a Stipulation to Dismiss Defendant Pellman was filed. (Dkt. No. 34.) On May 30, 2008, an Order was entered dismissing all claims against Defendant Pellman without prejudice. (Dkt. No. 35.)

(6) On several occasions during his incarceration, Defendants forced Plaintiff to stay in unsanitary cells while awaiting transfer to court appearances in Los Angeles County Superior Court (id. ¶¶ 109-12);

(7) Defendants manifested deliberate indifference towards Plaintiff's legal mail (id. ¶¶ 113-16);

(8) Defendants deprived Plaintiff of confidential visits with his attorney (id. ¶¶ 117-20);

(9) Defendants deprived Plaintiff of sunlight and outdoor recreation (id. ¶ 121);

(10) Defendants deprived Plaintiff of use of various LASD self-help programs (id. ¶¶ 122-23);

(11) Defendants punished Plaintiff by depriving him of food and two hot meals during his incarceration (id. ¶¶ 124-30).

Plaintiff claims that it was Defendants' failure to train and to supervise that was the cause of the alleged constitutional deprivations. (Id. ¶¶ 131-36, 137-51.) He also claims that Defendants' collect call only telephone system violates his First Amendment rights for several reasons, including that it requires inmates to pay exorbitant rates. (Id. ¶¶ 100-08, 152-57.)

Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (Id. at 28.)

## III.
## BACKGROUND

Defendants have moved to dismiss all or part of the FAC on the following five grounds:

(1) Plaintiff failed to exhaust his administrative remedies as required under the PLRA, codified as 42 U.S.C. § 1997e;

(2) Some of Plaintiff's claims are based on incidents barred by the statute of limitations;

1  (3) Plaintiff's claims fail to allege actionable constitutional violations and are barred by the Eleventh Amendment;

(4) Plaintiff makes no allegations of personal involvement as to Defendant Sander Peck; and

(5) Plaintiff's claim against Defendant Lee Baca is barred by the doctrine of quasi-judicial immunity.

(Mot. to Dismiss at 2.)

## IV.
## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of a statement of claim for relief. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff here is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

With respect to a plaintiff's pleading burden, the Supreme Court recently held that while a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations and footnote omitted), abrogating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2

L. Ed. 2d 80 (1957) (dismissal under Rule 12(b)(6) is appropriate if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief). The Bell Atlantic Court further explained in a footnote:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

Id. at 1965 n.3 (citation omitted).

While for most cases the Court considers only the complaint in determining the propriety of a dismissal motion, in a motion to dismiss for failure to exhaust, the Court may look beyond the pleadings to evidence relating to exhaustion and decide disputed issues of fact.[2] Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003). In this case, the Court has considered the declaration of Maurice R. Jolliff, Custodian of Records for the Twin Towers' Correctional Facility Legal Unit, filed in support of Defendants' Motion to Dismiss, setting forth that Plaintiff has not exhausted his administrative remedies.

The decision in Wyatt also clarified the proper pretrial procedure for resolving a contention of nonexhaustion. Because the PLRA's exhaustion requirement is not jurisdictional, the Ninth Circuit found that a failure to exhaust administrative remedies "should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion." Wyatt, 315 F.3d at 1119 (citing

---

[2] On January 22, 2008, the Court served Plaintiff with notice pursuant to Wyatt.

Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988)). "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. [Citation omitted.]" Id. at 1119-20.

## V.
## DISCUSSION

**A.    Failure to Exhaust Administrative Remedies Pursuant to the PLRA.**

Defendants contend that Plaintiff failed to exhaust his administrative remedies with regard to the claims raised in the FAC and, as a result, the FAC should be dismissed. This Court disagrees.

As part of the PLRA, Congress amended and strengthened the requirement that prisoners pursuing civil rights claims under 42 U.S.C. § 1983, or another federal statute, must first exhaust administrative remedies. As amended, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As revised, the exhaustion requirement is nondiscretionary and comprehensive.

The Supreme Court has held that the PLRA requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the prisoner seeks money damages and such relief is not available under the administrative process. See Booth v. Churner, 532 U.S. 731, 740-41, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Moreover, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). As a result, the exhaustion

requirement "applies to all prisoners seeking redress" for any complaint concerning prison conditions or occurrences. Id. at 520. Most recently, the Supreme Court addressed the issue of whether a prisoner can satisfy the PLRA's exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal and held that "proper exhaustion of administrative remedies is necessary." Woodford v. Ngo, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

Plaintiff argues that because he is civilly committed awaiting a hearing under California's Sexually Violent Predator's Act ("SVPA") (Cal. Welfare & Inst. Code §§ 6600, et. seq.), he is not a prisoner for purposes of the PLRA. (Opp'n at 4-5 (citing Page v. Torrey, 201 F.3d 1136 (9th Cir. 2000).) This Court agrees.

On its face, the PLRA applies only to prisoners, defined by the PLRA as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Page, 201 F.3d at 1139. In Page, the Ninth Circuit interpreted this provision to include only those who at the time of filing their civil actions were detained as a result of accusation, conviction, or sentence for criminal offense, and found that although the plaintiff was a prisoner within the meaning of the PLRA when he served time for his conviction, he ceased being a prisoner when he was released from the custody of the Department of Corrections and was civilly committed to the state hospital pursuant to the SVPA. Id. Therefore, being civilly detained, the plaintiff in Page was not subject to the PLRA's exhaustion requirement. Id.

Defendants attempt to distinguish Page by the fact that Plaintiff is housed at Twin Towers Correctional Facility in the custody of law enforcement, unlike the plaintiff in Page who at the time of his complaint was stationed at Atascadero State Hospital, and no longer in the custody of the Department of Corrections. (Reply at

1 (citing Morgan v. Maricopa, 259 F. Supp. 2d 985, 992 (D. Ariz. 2003), Booth, 532 U.S. at 734, and Porter, 534 U.S. at 532.)  They apparently base this argument on dicta in Page which stated that Page "ceased being a 'prisoner' when he was released from the custody of the Department of Corrections." Page, 201 F.3d at 1140.  They contend that the holdings of Porter and Booth also "suggest the broad nature of the PLRA, and specifically the exhaustion requirement," and, therefore, require that Plaintiff exhaust his claims.  (Reply at 1.)

      The Court finds the cases relied on by Defendants distinguishable from the facts herein and declines to extend their holdings to a civilly committed inmate, even one still in the custody of the Department of Corrections.  The operative distinction in Page does not appear to be the entity who is controlling the custody of the inmate, but whether at the time of filing the complaint the plaintiff was civilly or criminally detained.[3]  Page, 201 F.3d at 1139 ("[T]he natural reading of the text is that, to fall within the definition of 'prisoner,' the individual in question must be currently detained as a result of accusation, conviction, or sentence for a criminal offense.").  A civil detainee, wherever he or she is incarcerated, simply does not fall under the PLRA's definition of "prisoner" as someone incarcerated for "violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." See e.g., Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002).  Civil detention is by definition non-punitive.  Thus, Plaintiff is in no sense a "prisoner" as defined in the PLRA.  Id.  Accordingly, the Court finds that Plaintiff is not subject to the PLRA's exhaustion requirement.

///
///

**B.**    <u>**Fourteenth Amendment Violations Relating to Conditions of**</u>

---

[3] In this case, Plaintiff was civilly detained both at the time of the incidents, and at the time of filing his Complaint.

**Confinement.**

1. **Statute of Limitations.**

Federal civil rights claims are subject to the forum state's statute of limitations applicable to personal injury claims. Wallace v. Kato, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007). Thus, federal civil rights claims arising in California are subject to California's statute of limitations period, which is two years for an "action for assault, battery, or injury to . . . an individual caused by the wrongful act or neglect of another." Cal. Civ. Proc. Code § 335.1.

Federal law, however, determines when a claim accrues and when the applicable limitation period begins to run. Bagley v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir. 1991); Gibson v. United States, 781 F.2d 1334, 1340 (9th Cir. 1986); Venegas v. Wagner, 704 F.2d 1144, 1145 (9th Cir. 1983). A cause of action accrues under federal law as soon as a potential claimant knows or has reason to know of the injury which is the basis of the cause of action. Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996); Bagley, 923 F.2d at 760; Lee v. United States, 809 F.2d 1406, 1410 (9th Cir. 1987).

In this case, Respondent argues that some of Plaintiff's claims are time-barred because they are based on claims that accrued prior to July 31, 2005 (two years prior to the filing of this action on July 31, 2007), and that Plaintiff's FAC reveals that he was aware of the injuries giving rise to these claims at the time they arose. (Mot. to Dismiss at 5.) Plaintiff contends that his claims are not time-barred because they show that he was subjected to a systematic pattern or practice of retaliation, and, therefore, he may invoke the continuing violation doctrine. (Opp'n at 5-6.) The Court disagrees in part.

Before 2002, a plaintiff could invoke the continuing violation doctrine by showing a "series of related acts against one individual." Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir. 1997) (citing Green v. L.A. County Sup't of Schs., 883 F.2d 1472, 1480 (9th Cir. 1989). However, in a Title VII case, the

1  Supreme Court invalidated the "related acts" method of establishing a continuing
2  violation, stating that "discrete discriminatory acts are not actionable if time
3  barred, even when they are related to acts alleged in timely filed charges."  Nat'l
4  R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed.
5  2d 106 (2002).  Although the Supreme Court invalidated the "related acts" method
6  of showing a continuing violation, it declined to consider whether the "systematic
7  pattern-or-practice" method might still be available to show such a violation.
8  Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829 n.3
9  (9th Cir. 2003).  Thus, after Morgan, a plaintiff may only be able to invoke the
10 continuing violation doctrine if he shows "systematic policy or practice of
11 discrimination that operated, in part, within the limitations period."  Morgan, 536
12 U.S. at 107.  The Ninth Circuit has applied Morgan to § 1983 claims.  See, e.g., RK
13 Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002); Carpinteria
14 Valley Farms, 344 F.3d at 829.

Defendants allege that claims relating to the following incidents
("Incidents") are time-barred:

(1) On or about November 23, 2004, Plaintiff was forced to sleep on the floor of the Inmate Reception Center for three days;

(2) On or about November 25, 2004, Plaintiff was transferred to Pitchess Detention Center and allegedly housed with criminal inmates;

(3) Plaintiff was not placed with other civil detainees until late December 2004; and

(4) Plaintiff was deprived of two hot meals a day "prior to the date of July 31, 2005."[4]  (Mot. to Dismiss at 5-6.)

---

[4] Although somewhat unclear, Defendants apparently concede that Plaintiff would be entitled to base a claim on the hot meal policy after July 31, 2005.  (Mot.
(continued...)

1  Defendants also claim that certain incidents contain no time frame and,
2  therefore, claims based on those incidents should be dismissed:
3  (5) Plaintiff's claims relating to the County of Los Angeles' collect-call only
4  telephone system;
5  (6) Plaintiff's claims that he was forced into unsanitary cells while awaiting
6  court appearances;
7  (7) Plaintiff's claims regarding Defendants' deliberate indifference to his
8  legal mail;
9  (8) Plaintiff's claim that he was denied confidential attorney visits;
10 (9) Plaintiff's claim that he was deprived of sunlight and outdoor recreation;
11 and
12 (10) Plaintiff's claim he was deprived of the LACJ's self-help programs.
13 (Mot. to Dismiss at 5-6.)
14 Here, Plaintiff has not shown that the Incidents 1-3 above, alleged to be
15 barred by the statute of limitations, constitute a "systematic policy or practice of
16 discrimination" against him. Each of those acts are discrete events, and the
17 continuing violation doctrine does not save any claims based on these Incidents.
18 Thus, claims based on those Incidents are subject to dismissal as untimely.
19 In Incident 4 detailed above, Plaintiff alleges that on September 1, 2001, the
20 County instituted a policy of providing only one hot meal a day to civil detainees.
21 (FAC ¶ 129.) Plaintiff alleges that if he were incarcerated in a state hospital, he
22 would be receiving three hot meals per day. (Id. ¶ 128.) Plaintiff was civilly
23 detained in the LACJ commencing on November 23, 2004. Since that time, he has
24 received only one hot meal per day pursuant to the County's policy. The Court
25 finds that this allegation is sufficient at this stage to constitute a "systematic policy

---

[4] (...continued)
28 to Dismiss at 5.)

or practice," and the continuing violation doctrine may apply to this claim.

With respect to the remaining Incidents 5-10, Plaintiff claims that "it is clearly evident that those claims arose in December of 2004 when plaintiff was finally moved to the SVP housing unit, and are still occurring to date." (Opp'n at 8.) He also states that "[f]or the purpose of this opposition, plaintiff will set the dates of occurrence as July 31, 2005." (Id.)  This is not sufficient.  Some of these claims appear to be akin to discrete incidents that might be time-barred (e.g., being placed in unsanitary cells while awaiting court appearances) and some appear to be systematic policy or practice (e.g., deliberate indifference to legal mail).  Thus, some may support a claim and others might not.  Bell Atlantic requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  The FAC does not provide enough specificity as to dates and other details of the alleged Incidents for this Court to determine whether they are time-barred.

Thus, the Court finds that Plaintiff's claims based on Incidents 5 through 10 are subject to dismissal with leave to amend.

**2.      Equitable Tolling.**

Plaintiff argues that California Civil Procedure Code § 352.1, which provides for an additional two year tolling period for someone who is "imprisoned on a criminal charge," should apply. (Opp'n at 7.) This provision on its face does not apply to civil detainees. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). The court in Jones, however, also made note that "[t]he injustice arising from a refusal to toll the statute of limitations for Jones would be great, particularly in light of California's tolling provision for the disability of imprisonment." Id. at 928.

In Jones, the plaintiff was housed for the first year of his two-year confinement with the general prison population, "subject to conditions-and therefore obstacles to litigation-identical to those of a criminal inmate." Id. at 929. For the second half of his confinement, he was held in administrative segregation

1 where "his access to the law library and to visitors was further curtailed." Id. At
2 that point, he had even less access to lawyers and legal materials than his criminal
3 cellmates. Id. The court also recognized that Jones alleged conditions of
4 confinement that made the filing of a lawsuit practically impossible – restrictions
5 on legal research, no physical access to the law library, no access to cases longer
6 than twenty pages, access to cases only by citation. Id. The court held that
7 equitable tolling applies for a claim asserted by a continuously confined civil
8 detainee who has pursued his claim in good faith. Id. at 929-30.

9       In this case, Plaintiff was detained with the general population for something
10 under a month. He has not alleged that he had any issues with access to the law
11 library or to legal materials during his detention at the LACJ. Yet, he did not file
12 his claims herein until after the two year limitation period had tolled for at least
13 some of them (as discussed supra, Part V.B.1).

14       Accordingly, Plaintiff has failed to meet his burden of showing that he
15 pursued claims that accrued prior to July 31, 2005, in good faith, and equitable
16 tolling is inapplicable for claims based on those Incidents.

17       **3.**     **Failure to State a Claim.**

18       In their Motion to Dismiss, Defendants allege that the crux of Plaintiff's
19 FAC is that his confinement at the LACJ and the conditions of his confinement
20 pending adjudication of the SVPA proceedings against him are unconstitutional,
21 and that Plaintiff failed to establish a constitutional violation under the Fourteenth
22 Amendment's Due Process Clause. (Mot. to Dismiss at 7 (citing Munoz v.
23 Kolender, 208 F. Supp. 2d 1125 (S.D. Cal. 2002).)

24       However, as noted by Plaintiff, the Ninth Circuit in Jones held that when a
25 civil detainee is confined in conditions "identical to, similar to, or more restrictive
26 than, those in which his criminal counterparts are held, we presume that the
27 detainee is being subjected to 'punishment.'" Jones, 393 F.3d at 932. The Court
28 believes that at least some of the Incidents detailed by Plaintiff state facts sufficient

to state a constitutional violation, assuming they are not barred by the statute of limitations.[5]

**C.    There Are No Allegations of Personal Involvement by Defendant Peck.**

To state a claim against a particular individual defendant for violation of his civil rights under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. See Karim-Panahi, 839 F.2d at 624. "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

Plaintiff brought this action against Defendant Peck, the chief physician for the Los Angeles County Jails Twin Towers Correctional Facility. (FAC at 4.) However, the FAC fails to specify any acts or omissions by Defendant Peck, let alone any acts or omissions by him which allegedly caused a deprivation of any of Plaintiff's federal constitutional rights. An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). "A plaintiff must allege facts, not simply conclusions, that show that an

---

[5] Specifically, Incidents 4 and 6 through 10 may show that Plaintiff's conditions of confinement were identical to, similar to, or more restrictive than, that of his criminal counterparts. The Court expresses no opinion as to whether any of Plaintiff's claims will be able to survive summary judgment should he include them in a Second Amended Complaint.

individual was personally involved in the deprivation of his civil rights."[6] Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

In his Opposition, Plaintiff sets forth allegations that Dr. Peck has established certain medical policies regarding SVPs, and that those policies, practice, and customs "are the moving factors behind the constitutional violations of plaintiff's civil rights." (Opp'n at 20, 21.) These allegations, however, are nowhere in the FAC. Nor, without more, are they sufficient to meet the Bell Atlantic standard on a motion to dismiss. Accordingly, dismissal of Defendant Peck is warranted.

**D.    Qualified Immunity of Defendant Baca.**

Defendant Baca claims to be entitled to quasi-judicial immunity because his actions in detaining Plaintiff were pursuant to the execution of a facially valid court order. (Reply at 6.)

Qualified immunity is a fact specific inquiry. See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Given the Court's ruling on the other issues herein, such a fact intensive determination is inappropriate at this stage of the proceedings. See Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] Rule 12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.") (citing Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir.1998)).

///
///
///

---

[6] Particularly where a plaintiff seeks damages, assessment of the causal connection between the alleged deliberate indifference and the Eighth Amendment deprivation requires a "very individualized approach which accounts for the duties, discretion, and means of each defendant." Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988).

15

## VI.
## **ORDER**

Based on the foregoing, the Court grants Defendants' Motion to Dismiss and hereby dismisses the FAC with leave to amend. <u>See</u> <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a <u>pro se</u> litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

If Plaintiff still wishes to pursue this action, he shall have thirty (30) days from the date of this Order within which to file a Second Amended Complaint, attempting to cure the defects in the First Amended Complaint. The Second Amended Complaint shall be complete in itself and must remedy the deficiencies discussed. Plaintiff may not use "et al." in the caption but must name each Defendant against whom claims are stated. Furthermore, Plaintiff must use the blank Central District Civil Rights Complaint form accompanying this order, must sign and date the form, must completely and accurately fill out the form, and must use the space provided in the form to set forth all of the claims that he wishes to assert in his Second Amended Complaint. The Clerk is directed to provide Plaintiff with a blank Central District Civil Rights Complaint form. The Second Amended Complaint shall not refer to the previously dismissed Complaints.

Failure to comply with these requirements may result in the dismissal of this action for failure to prosecute and/or failure to comply with a court order. Failure to remedy the deficiencies discussed may also result in a recommendation that the action be dismissed.

DATED: September 30, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge